KING HARDWARE CO. v. J. G. CHRISTOPHER CO. et al.

(Circuit Court of Appeals, Fifth Circuit.   April 26, 1915.)

No. 2743.

1. ATTORNEY AND CLIENT ☞71—AGREEMENTS SIGNED BY ATTORNEYS—CONCLUSIVENESS ON PARTIES.

An intervening creditor, who in contesting the report of the master to hear and report findings on issues after denial of an involuntary petition in bankruptcy, claimed the benefit of a stipulation signed by his counsel of record without questioning the authority of the counsel, could not question the authority of counsel for the first time in the Circuit Court of Appeals on petition to superintend and revise the decision of the District Court, and the authority of the counsel to sign the stipulation will be assumed, in the absence of any evidence in the record to the contrary.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 97–101; Dec. Dig. ☞71.]

2. BANKRUPTCY ☞477—DENIAL OF INVOLUNTARY PETITION—STIPULATION OF PARTIES—CONSTRUCTION.

A stipulation executed by the respective counsel of record of the petitioning and intervening creditors and the alleged bankrupt, pending refer-

ence to a master to hear evidence and report findings on issues as to receiver's compensation, counsel fees, and expenses of the proceedings, which provides that the agreement shall not affect the correctness of the receiver's accounts and the liability on his bond, or the right of the receiver and his agent and accountants to compensation, and how the same shall be paid, and that all costs and allowances shall be taxed, one-half against the petitioning and intervening creditors, and one-half against the alleged bankrupt, relieves the petitioning creditors of primary liability imposed by Bankr. Act July 1, 1898, c. 541, § 3e, 30 Stat. 546 (U. S. Comp. St. 1913, § 9587), and leaves to the court to determine what allowances shall be made on the claims mentioned, and how the allowances shall be taxed as between the petitioning and intervening creditors according' to equity rules and principles, and if the petitioning creditors are unable to respond to the costs and expenses allowed, it may also determine whether the intervening creditors shall pay the same.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 900; Dec Dig. ☞477.]

**3.** Bankruptcy ☞477—Denial of Involuntary Petition—Stipulation of Parties—Construction.

Where the petitioning and intervening creditors and the alleged bankrupt stipulated that the costs and expenses should be taxed, one-half against the petitioning and intervening creditors and one-half against the bankrupt, and it appeared that the receiver made use of materials of a third person, but he realized a specified sum from the use of the materials by renting them or part of them, the use of the materials cost the receivership the difference between the amount awarded to the third person and the amount received by the receiver for their use, and the net amount must be charged between the petitioning and intervening creditors and the bankrupt, as required by the stipulation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 900; Dec. Dig. ☞477.]

**4.** Bankruptcy ☞476—Petitioning and Intervening Creditors—Stipulations—Validity.

The petitioning and intervening creditors and the alleged bankrupt may stipulate for an apportionment of the costs and expenses of the proceedings resulting in denial of the involuntary petition, and when that is done an intervening creditor may not be allowed to set off against the amount of costs and expenses taxed against him his demand against the alleged bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 898, 899; Dec. Dig. ☞476.]

**5.** Bankruptcy ☞474—Expenses—Stipulation of Parties—Effect.

Where an alleged bankrupt stipulated with the petitioning and intervening creditors that one-half of the allowances made to the receiver, his agent, and accountants should be taxed against the petitioning and intervening creditors, and one-half against the alleged bankrupt, the latter could not escape liability for an allowance to the accountants on the ground that their services were of no benefit to it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. ☞474.]

Petition to Superintend and Revise from the District Court of the United States for the Southern District of Georgia; William T. Newman, Judge.

Petition by the King Hardware Company, an intervening creditor, and cross-petition by the Beach Manufacturing Company, an alleged bankrupt, to superintend and revise the decree of the District Court as to receiver's compensation, counsel fees, and expenses of bankruptcy

proceedings.    Decree complained of by petitioners reversed, and cause remanded for further proceedings, and cross-petition denied.

Alex W. Smith, of Atlanta, Ga. (Smith, Hammond & Smith, of Atlanta, Ga., on the brief), for petitioner.

A. W. Lane, of Macon, Ga. (R. C. Jordan, of Macon, Ga., on the brief), for respondent Commercial Nat. Bank of Macon.

Frederick T. Saussy, of Savannah, Ga., for respondents Wilson & Pullen and Reppard Iron Co.

Edward S. Elliott, of Savannah, Ga., for respondent Crovatt.

George S. Jones, of Macon, Ga. (Wilson & Bennett, of Waycross, Ga., V. E. Podgett, and Hardeman, Jones, Park & Johnston of Macon, Ga., on the brief), for Beach Manufacturing Co.

John S. Walker, of Waycross, Ga., pro se and for certain petitioning and intervening creditors.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

WALKER, Circuit Judge.    After the adjudication in favor of the Beach Manufacturing Company on the involuntary petition in bankruptcy against it, and after the court had made a reference to a special master to hear evidence and report his findings of fact and conclusions of law on issues raised as to the receiver's compensation, counsel fees, and expenses of the proceedings, if any, for which the defendant may be liable, as to the payment and protection of outstanding receiver's certificates, and as to the taxing of costs, expenses, and damages, if any, of the defendant against the petitioning creditors, and the bond given by them at the time of the appointment of the receiver; and before the special master had executed that order of reference the petitioning and intervening creditors and the Beach Manufacturing Company, the alleged bankrupt, by their respective attorneys of record, entered into a written agreement which provided as follows:

"The parties hereto mutually agree as follows:

"(1) That this agreement shall not affect or dispose of the following questions pending before the special master, but the same shall proceed to hearing, finding, and report by him: (a) The correctness or incorrectness of the receiver's accounts, and the liability upon his bond as receiver.  (b) The right of the receiver, R. L. Moss, the receiver's agent, Henry G. Rucker, and the accountants, Wilson & Pullen, to compensation, the amount of such compensation, and how the same shall be paid.

"(2) Isaac & Heyward agree that they will not claim anything for fees or expenses as attorneys for the receiver, either in the main case in Georgia or the ancillary case in Florida.

"(3) The attorneys for the respondent the Beach Manufacturing Company agree that they will not claim anything as a part of the costs for fees or expenses as attorneys for the alleged bankrupt.

"(4) No claim shall be made for damages upon the bond given by the petitioning creditors.

"(5) All costs in the above-stated bankruptcy case proper, both in Georgia and Florida, as distinguished from the ancillary proceedings, shall be taxed against the petitioning creditors and the intervening creditors, and not against the respondents.

"(6) All costs and expenses, including receiver's certificates, and such allowances as may be made as a part of the costs of administration to the re-

ceiver, the receiver's agent, and the accountants, if any, including the costs of the present hearing before the special master, whether in the receivership proceedings in Georgia or in the ancillary receivership proceedings in Florida, shall be taxed, one-half against the petitioning creditors and the intervening creditors, and one-half against the alleged bankrupt."

Attorneys who were attorneys of record of the King Hardware Company as an intervening creditor signed this agreement "as attorneys of record for petitioning and intervening creditors."

[1] The petition of the King Hardware Company to this court, praying that it superintend and revise the action of the District Court which is complained of, seeks to raise a question as to the authority of those attorneys to bind it by the agreement above set out. So far as the record discloses, no suggestion of a lack of authority in those attorneys to bind the petitioner by that agreement was brought to the attention of the District Court. On the contrary, the petitioner, in excepting to the master's report and in contesting the correctness of certain features of it, claimed the benefit of that agreement. Certainly the record does not indicate that the District Court was made aware that the petitioner questioned the binding effect upon it of the agreement. The question of the authority of the petitioner's attorneys of record cannot be raised here for the first time. An attorney or solicitor may consent to whatever his client authorizes. His authority from his client to make an agreement in the latter's behalf will be assumed in an appellate court, in the absence of any evidence in the record to the contrary, or that it was questioned in the trial court. Harniska v. Dolph, 133 Fed. 158, 66 C. C. A. 224; Pacific Railroad v. Ketchum, 101 U. S. 289, 296, 25 L. Ed. 932.

[2] Finding that the petitioner is concluded by the stipulation entered into by his counsel of record, the meaning and effect of the stipulation will now be considered. It is contended in behalf of the petitioner that the respective provisions of paragraphs 1 and 6 of the stipulation are inconsistent, and that the exceptions stated in paragraph 1 are controlling; a result being to leave open the question of the receiver's compensation, and the claim of the accountants, Wilson & Pullen, for such direction by the court as to the payment of these items, if allowed, as may be consistent with the equitable principles governing in the situation disclosed. We do not think that the suggested inconsistency exists. An effect of the exception stated in subdivision b of paragraph 1 is to leave the question as to what, if any, compensation should be allowed to the receiver, the receiver's agent, and the accountants, to be determined, not by the agreement, but in the way contemplated by the court when it referred that question to the special master. There is no inconsistency between this provision and the explicit provision of paragraph 6 to the effect that such allowances, if any, on the three claims mentioned, as may be made by the court as part of the costs of administration, should, as between the parties to the agreement, be taxed, one-half against the petitioning and the intervening creditors and one-half against the alleged bankrupt. The result was to leave it to the court to determine what, if any, allowances should be made on the three claims mentioned; the agreement stipulating, however, that, if such allowances should be made, the parties to

the agreement were to be taxed with the stipulated proportions of the amounts so allowed.

The stipulation provides, as to the division of costs and expenses, that all costs in the bankruptcy case proper, both in Georgia and Florida, as distinguished from the ancillary proceedings, shall be taxed against the petitioning creditors and the intervening creditors, not against the respondent, and that all costs and expenses, including receiver's certificates, allowances, etc., shall be taxed, one-half against the petitioning and intervening creditors, and one-half against the alleged bankrupt; but there is no provision in said stipulation in regard to or regulating the apportioning of costs and expenses, etc., as between the petitioning and the intervening creditors themselves, and the court is left free to follow equity rules and principles in taxing and apportioning the costs, expenses, etc. Without the stipulation the petitioning creditors are liable for counsel fees, costs, expenses, and damages. This is the law as stated in section 3e of the Bankruptcy Act. Certainly, up to the date of the consent order continuing the receivership, each of the intervening creditors was liable only for the expenses and costs attending his own intervention. The court seems to have assumed that the stipulation controlled, so as to require a judgment in solido against all the creditors. The court, in the third, fifth, and seventh paragraphs of the decree under review, made no discrimination as between the petitioning and intervening creditors, but, following the stipulation, taxed them one-half of the costs and expenses therein allowed. In the eighth and eleventh paragraphs of the decree all the items are brought together, and the petitioning and intervening creditors are condemned to pay the same jointly and severally; that is, as between the said creditors, payment is required one for the other, which, as pointed out, is not in accordance with the ordinary rules of the court, nor in any way provided for in the stipulation in the case. It does not seem to be equitable to compel a late intervening creditor in a bankruptcy case, not only jointly but severally to pay costs of court, expenses, and damages incurred long before he presented his claim in the case. And particular stress is given to this suggestion by the fact that in this case some 52 labor claimants, with liens upon the property of the Beach Manufacturing Company, whose claims run in various amounts from $3.65 to $259.75, are condemned jointly and severally to pay. all the regular costs of the bankruptcy and one-half of the expenses incurred by the appointment of the receiver and his administration of the property, while what, if any, part they took in the proceedings does not appear. If, peradventure, the petitioning creditors, who under the law are primarily liable for all costs and expenses, etc., shall not be able to respond, it may then be in order for the court to inquire whether under the stipulation the intervening creditors can be called on to pay.

[3] Furthermore, we think that the court fell into error in its ascertainment of the amount of one item of the expenses of the receivership, one-half of which was adjudged against the petitioner. We refer to the item disclosed by the claim made by the Reppard Iron Company. That claim was based on the fact that the receiver made use of certain

iron rails found on a lumber tramway of the alleged bankrupt, the Beach Manufacturing Company, which rails did not belong to it, but the possession of which it had acquired under a contract with the owner, the Reppard Iron Company. The correct amount of that item of expense is the ascertained net cost or outlay consequent upon the receiver's making use of that property which belonged to a third party. By the decree of the court it was ascertained that the total amount recoverable by the owner of the rails for the use of them by the receiver was $1,117.94. But the use of these rails did not cost the receivership the amount so ascertained to be due to the owner of them, as it is disclosed that the receiver realized $700 from the use of the rails by renting them or a part of them. The result was that the use of the rails cost the receivership the difference between the amount awarded to their owner, $1,117.94, and the amount received by the receiver for their use, $700, and that the net amount of this item of the expenses of the receivership was $417.94. Instead of taxing against the petitioning and the intervening creditors one-half of the amount allowed the Reppard Iron Company, to wit, $558.97, the amount to be taxed against them on that score is $208.97, that amount being one-half of the net expense or outlay incurred by the receiver by taking possession of and using the rails mentioned. The remaining one-half— $208.97, plus $700, the latter representing the amount realized by the receiver from renting the rails and chargeable against him; total, $908.97—should be charged against the Beach Manufacturing Company, if, as we assume, though this does not clearly appear, the receiver's account of his receipts and disbursements not being set out in the record made for this court, that $700 item was included in the total of $3,956.35, the ascertained amount of the assets of the Beach Manufacturing Company which had been applied toward the expenses of the receivership, and which was allowed as a credit on the total of $6,127.08 taxed against that company.

[4] A question of set-off is raised by the petitioner. We understand the contention to be that the petitioner should be allowed to set off against the amount of costs and expenses taxed against it its demand against the Beach Manufacturing Company. This claim cannot be recognized. The amount that may be adjudged against the several parties to the agreement is for the costs and the expenses incident to the receivership. These costs and expenses are in effect due to the court or its officers from the party or parties to the proceeding found to be liable for them. Between this liability to the court or its officers, and the liability to the petitioner of its debtor, the Beach Manufacturing Company, there is no mutuality, and the one demand is not subject to be set off against the other. It was competent for the parties to the agreement above set out to stipulate for an apportionment as between themselves of the costs and expenses of the court proceedings, but nothing they could do could enable one of them to set off its demand against the other against the liability which the court adjudged against it on account of the court costs and the expenses of the receivership.

[5] In reference to the complaint made by the cross-petition of the Beach Manufacturing Company that it was not liable for any part of

the amount allowed to the accountants because the services of the accountants were of no benefit to it, no more need be said than that this feature of the decree was in accordance with the agreement to which the Beach Manufacturing Company was a party. Under that agreement one-half of the amount ascertained to be due to the accountants was to be taxed against the Beach Manufacturing Company. That amount being so taxable was not conditioned upon a finding that the Beach Manufacturing Company was benefited in any way by the services rendered by the accountants. By that agreement the Beach Manufacturing Company saved itself, so far as concerned certain items in dispute, the trouble and expense of a trial before the special master under the decree of reference to him and of a contest of his finding in that regard, and is in no position to sustain a claim against the propriety of a feature of the decree rendered which was in conformity with that agreement.

It follows that the Beach Manufacturing Company's cross-petition to superintend and revise must be denied; and it is so ordered. On the petition of the King Hardware Company, the decree complained of is reversed, and the cause is remanded for further proceedings not inconsistent with the conclusions above stated. The costs resulting from the petition and the cross-petition are to be taxed against the Beach Manufacturing Company.